# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

SEP 30 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| United States of America <br> v. <br><br> Rich XIONGPAO, <br> aka Thai XIONG <br> _Defendant(s)_ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No.

1:15MJ1475AB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ September 30, 2015 _____ in the county of _____ Madera _____ in the

_Eastern_      District of      _California_      , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B); | Conspiracy to Manufacture, Cultivate and Possess with the Intent to Distribute 100 or More Marijuana Plants –PENALTY: Mandatory minimum prison term of 5 years and maximum prison term of 40 years and/or fine of $5,000,000; supervised release of at least 4 years up to life; $100 penalty assessment |
| 18 U.S.C. § 1361 | Damaging Government Land and Natural Resources - PENALTY: 10 years in prison and/or fine of $250,000 or twice the gross pecuniary loss; supervised release of up to years; $100 penalty assessment |

This criminal complaint is based on these facts:

(see attachment)

☒  Continued on the attached sheet.

_Complainant's signature_

Mike Grate, Special Agent, US Forest Service
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 9/30/2015

_Judge's signature_

City and state:      Fresno, California

Stanley A. Boone, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Michael Grate, being duly sworn, do hereby swear or affirm:

### I. AFFIANT'S TRAINING AND EXPERIENCE

1. I am a Special Agent with the United States Forest Service (USFS), assigned to the Sierra National Forest in Madera, California. I have been employed with the USFS as a Law Enforcement Officer (LEO) since February, 2007. Prior to being a Special Agent with the USFS, I was a Law Enforcement Park Ranger with the National Park Service (NPS) for approximately 10 years. I am a graduate of the Federal Law Enforcement Training Center. I also have the powers of a California State peace officer, pursuant to California Penal Code Section 830.8(b). My primary duties include detecting, investigating, apprehending, and prosecuting criminal activity on and relating to National Forest System lands.

2. I have conducted numerous controlled substance investigations and have arrested/cited many persons for being under the influence, possession, manufacturing and transportation of various controlled substances, including marijuana, and illegal drug paraphernalia. While employed as an LEO, I attended an 80-hour course given by the USFS on marijuana cultivation. While employed as an LEO, I have investigated or participated in the investigation of hundreds of large-scale, clandestine, outdoor marijuana cultivation sites on federal, state and private lands. The marijuana cultivation sites have been in various stages of production.

3. As a result of investigating these marijuana cultivation sites, I have become very familiar with methods used by drug trafficking organizations (DTOs) to locate, set up, cultivate and conceal the marijuana cultivation sites. I have also become very familiar with methods used to re-supply the cultivation sites and remove harvested marijuana from the mountains and remote areas.

4. During the course of these investigations, I have had the opportunity to interview or assist in interviewing DTO suspects involved in all aspects of the operation – supplying,

cultivating and transporting marijuana. During these interviews, I have discussed methods used to grow marijuana, evade detection and transport marijuana and supplies on National Forest lands.

5. I have attended over 100 hours of specialized training and have 15 years of on-the-job training and experience in tracking individuals and groups in remote, mountainous areas in a variety of conditions and situations. I have used these skills in search and rescue situations and to detect and track marijuana growers on numerous occasions. I have received over 100 hours of formal training relating to the enforcement of controlled substance laws. This training has been provided to me by other officers on-the-job and in the classroom. I have worked with the U.S. Drug Enforcement Administration (DEA), National Park Service, Homeland Security Investigations of Immigration, Customs and Enforcement (ICE), California Department of Justice, California Highway Patrol, Kern, Fresno, Tulare, Madera, Mariposa and Tuolumne County Sheriff's Departments, Special Events Teams, SWAT and Multi-Agency Task Forces.

6. I have received classroom and on-the-job training from numerous senior officers on drug recognition and have made numerous arrests for subjects being under the influence of and driving under the influence of various controlled substances, including marijuana. In addition to receiving information for this affidavit from other officers and agents, I have am the case agent and have personally participated in the investigation set forth below.

## II. INTRODUCTION AND PURPOSE OF THE AFFIDAVIT

7. This affidavit is made in support of a criminal complaint and arrest of **Rich XIONGPAO,** aka **Thai XIONG ("XIONGPAO")** for violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846, conspiracy to manufacture, to distribute and to possess with intent to distribute 100 or more marijuana plants, a Schedule I controlled substance, and violation of Title 18, United States Code, Section 1361, damaging government land and natural resources.

8. The facts and information set forth herein are based upon my knowledge and observations, observations of other law enforcement personnel, my review of investigative

reports, and conversations with federal and state law enforcement officials.  This affidavit is intended to show there is probable cause in support of the requested criminal complaint and arrest and does not purport to include every fact known to me, rather, only those facts I believe necessary to establish probable cause.

### III. PROBABLE CAUSE STATEMENT

9.      On September 21, 2015,[1] a wild fire reconnaissance helicopter reported a marijuana cultivation site located in Ansel Adams Wilderness Area in the Sierra National Forest, in Madera County, within the State and Eastern District of California.

10.      On September 24, 2015, Californian Highway Patrol (CHP) helicopter H-40 confirmed the marijuana cultivation site was located in a congressionally-designated Ansel Adams Wilderness Area in the San Joaquin River Gorge.  H-40 reported the cultivation site appeared to have between 400 and 1,000 fully mature plants.

11.      On September 25, 2015, LEOs Fouch and Villanueva hiked into the area and confirmed numerous mature plants were growing and near ready to be harvested.  The LEOs obtained Global Position Satellite (GPS) coordinates and deployed trail cameras to monitor road and trail access.  LEO Fouch marked the location at the approximate GPS coordinates of N 37 26.941' x W 119 15.022.

12.      On September 26, 2015, I notified Madera County Sheriff's Department and made arrangements for Ambrosini, Call When Needed (CWN) helicopters, to assist in eradicating the marijuana cultivation site.

13.      On September 29, 2015, at 10:00 a.m., USFS law enforcement personnel followed the South Fork Trial from the trail head located on Forest Road 5S29.  The trail led

---

[1] Any and all references herein to dates, times and drug quantities are to approximate dates, times and drug quantities.

approximately 1,500 vertical feet down into the San Joaquin River Gorge, heading towards the GPS location supplied by LEO Fouch.

14.    At 12:00 p.m., LEOs Villanueva, Fouch, Wheeler, and Brinley and SA Mayer and I located the marijuana cultivation site. I observed numerous marijuana plants growing under the canopy of trees and bushes in close proximity to the intersection of two popular Wilderness trails, the French Trail and the South Fork Trail. The marijuana plants were being irrigated by black plastic hose. I observed hundreds of fully mature marijuana plants approximately 6 to 9 feet tall. Each marijuana plant held 3 to 5 pounds of very large buds. I observed the marijuana buds were enormous. Most of the buds were over a foot long. The buds were a deep green and purple color. I observed buds were thick with sticky resin and THC crystals. The marijuana appeared to be high quality.

15.    At 1:00 p.m., LEO Brinley and SA Mayer observed an adult male tending to marijuana plants in a plot of marijuana located at N 37 26.885' x W 119 15.050'. LEO Brinley and SA Mayer observed the subject tending to the marijuana plants for approximately 30 minutes. They observed the subject was wearing a purple shirt and tying heavy branches of marijuana to the stalks and wooden stakes.

16.    At 1:30 p.m., LEOs Villanueva, Fouch, and Wheeler and I located a camp at the approximate GPS coordinates N 37 26.941' x W 119 15.022'. Minutes later, we followed a well-traveled trail and fresh foot prints, contouring the steep terrain toward the area where LEO Brinley and SA Mayer were observing the male subject tending marijuana plants.

17.    At 1:45 p.m., LEOs Villanueva, Fouch, and Wheeler and I observed the male subject wearing a purple shirt, tending marijuana plants.

18.     Seconds after we observed the male subject tending the marijuana plants, we yelled, "Police stop" several times.  LEO Wheeler I pursued the subject on foot a short distance and I arrested him without incident.  LEOs Fouch and Villanueva cleared the marijuana cultivation area.  LEO Brinley and SA Mayer observed the arrested subject was the same subject they had been observing.

19.     The male subject I apprehended was later identified as **Rich XIONGPAO** via his California driver's license number D8477802.  **XIONGPAO** originally stated his name was **Thai XIONG**, which I believe is his birth name that was later changed.

20.     **XIONGPAO** was in possession of a green back pack containing personal belongings, a cell phone, a large knife and numerous small pieces of string.  **XIONGPAO** stated he was the only person working in the marijuana cultivation site.

21.     I located a loaded Remington 870 Express Magnum shotgun (D663214M) in the camp area.  (N 37 26.941' x W 119 15.022')

22.     Law enforcement personnel eradicated 428 fully mature marijuana plants from four separate plots of marijuana.  The plots were interconnected with irrigation hose and trails.

23.     141 mature marijuana plants were eradicated from Plot 1, where  XIONGPAO was arrested.

24.     42 mature marijuana plants were eradicated from Plot 2.

25.     69 mature marijuana plants were eradicated from Plot 3 from which LEOs Brinley and Villanueva collected a random sample of marijuana plants, including root balls.  The plants in plot three were slightly smaller, enabling officers to pull root balls.  This was the only area where officers were able to pull roots from the ground due to the enormous size of the plants in the other plots.

26.    176 mature marijuana plants were eradicated from Plot 4.

27.    The 428 eradicated marijuana plants weighed approximately 3,000 pounds due to their large size and mature stage of growth.  Six full net load of marijuana weighing approximately 400 pounds each were removed from the area by helicopter.  The marijuana removed from the area completely filled a dump trailer and a full size pick-up truck bed.  Law enforcement personnel buried an additional 600 to 800 pounds of mature marijuana at the site.

29.  Experienced agents estimate each marijuana plant in this site contained approximately five times the amount of buds on average fully mature and healthy marijuana plants.  The marijuana appeared to be higher quality than what is commonly observed in large outdoor cultivation sites.

30.    LEO Villanueva located electronic timers at the grow site and the water source/dam at approximate GPS coordinates N 37 26.979' x W 119 15.081'.  Water was being diverted from a dammed riparian area where crystal clear water flowed from a spring producing vast amounts of fresh and clean water.

31.    LEO Brinley and SA Mayer escorted **XIONGPAO** out of the area. **XIONGPAO's** handcuffs were adjusted so his hands would be in front of him as he walked and he was allowed to lead the way.  XIONGPAO led officers back to the trail without hesitation or direction from the officers.

32.    Officers further scouted the area and determined the cultivation site was part of a cultivation complex spanning a significant distance over the steep and rugged terrain. Numerous bottles and containers of chemicals, fertilizers and unidentified substances were observed and photographed.  SA Mayer stated many of the chemical and fertilizers were very expensive compared to chemical and fertilizers commonly used by DTO.

33.   LEOs Villanueva and Brinley interviewed **XIONGPAO** with the interpretive

assistance of Fresno County Sheriff Deputy Sher Moua, who speaks Hmong as his first language.

34.   **XIONGPAO** was advised of his rights verbally using a USFS Advice/Waiver of

Rights form, which Deputy Moua translated.  The interview was recorded.

35.   **XIONGPAO** indicated he was getting paid $20,000 to water and tend the

marijuana plants.

36.   **XIONGPAO** indicated he had control of the shotgun and had fired it on several

occasions.

37.   **XIONGPAO** indicated he had been working in the marijuana cultivation site

since April or May and had used and applied various chemicals during the cultivation process.

**XIONGPAO** further indicated he was not aware what all the chemicals were, but he knew he

had applied pesticides.

38.   **XIONGPAO** was wearing rubber gloves when he was arrested and the area was

littered with numerous discarded gloves.

39.   The cultivation operation caused significant damage to the land and natural

resources covering at least three acres of National Forest/Congressionally-Designated and

Protected Wilderness Land.  Throughout the grow site, multiple species of natural vegetation had

been cut to accommodate the marijuana plants and related foot trails, cooking, and sleeping

areas.  Additionally, a water reservoir had been dug into the soil and damned the flow of pristine

water to an entire wilderness riparian area.  The diverted water was used in the marijuana

cultivation.  The water in the reservoir had been diverted from a nearby unnamed spring.  The

soil also had significant disturbance throughout the impacted area.  The cleared out areas and

multiple trails within and leading to the grow site are on very steep terrain which can cause soil

erosion and sedimentation deposits into the creek during and after rain and/or snow events. There were enormous amounts of trash scattered in pits and all throughout the area. I observed fences constructed with twine, wire and branches impeding wildlife egress. I know, based on my training and experience, that the damage to the National Forest land and resources caused by the marijuana cultivation operation will exceed $1,000.

## IV. CONCLUSION

41.     Based on the foregoing, I submit there is probable cause to charge and arrest **Rich XIONGPAO,** aka **Thai XIONG,** for conspiring to manufacture, to distribute and to possess with the intent to distribute 100 or marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846, and damaging government land and natural resources, in violation of Title 18, United States Code, Section 1361.

I swear under penalty of perjury that the facts presented herein are true and accurate to the best of my knowledge.

MIKE GRATE
Special Agent
United States Forest Service

SWORN AND SUBSCRIBED TO ME BEFORE THIS 30 DAY OF SEPTEMBER, 2015

STANLEY A. BOONE
United States Magistrate Judge
Eastern District of California

Reviewed and approved as to form this 30th day of September. 2015:

/s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant U.S. Attorney