PHILLIP A. TALBERT
United States Attorney
ROSS PEARSON
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>RICH XIONGPAO,<br><br>                    Defendants. | CASE NO. 1:15-CR-00285-LJO<br><br>SENTENCING MEMORANDUM<br><br>DATE: February 27, 2017<br>TIME: 8:30 a.m.<br>COURT: Hon. Lawrence J. O'Neill |

## I.     INTRODUCTION

The United States agrees that defendant Rich Xiongpao is entitled to a two-level downward adjustment for acceptance of responsibility. But the United States believes the remainder of the Guidelines calculation in the Presentence Investigation Report is correct. Specifically, the PSR correctly applied a two-level increase under U.S.S.G. § 2D1.1(b)(2) and found Xiongpao ineligible for a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 because he possessed a rifle in connection with the offense.

The United States therefore recommends that the Court sentence Xiongpao to 60 months' imprisonment on Count Two and a concurrent sentence of six months on Count Three, 48 months of supervised release on Count Two and a concurrent sentence of 12 months of supervised release on Count Three, and a $200 special assessment. The United States has discussed a stipulation for an amount of restitution with Xiongpao, but at this time it requests that restitution be held open for ninety days.

## II.     FACTUAL BACKGROUND

In September 2015, United States Forest Service Law Enforcement Officers and Agents (collectively, "the officers") were investigating a suspected marijuana grow in the Ansel Adams Wilderness Area of the Sierra National Forest. The officers hiked to the marijuana grow, and saw the defendant, Rich Xiongpao, in the middle of one of the plots, systematically tending to the plants. The officers made their way into the grow and arrested Xiongpao without issue. Xiongpao was the only person in the grow.

In the middle of the grow, there was a campsite set up, and bottles of pesticides, fertilizers, and other chemicals, were scattered on the ground in the campsite, as well as an applicator to spray chemicals. There was also a tent in the campsite, and inside the tent the officers found a Remington 870 Express Magnum shotgun, which was wrapped in plastic and loaded with a single shotgun shell.

Once the area was secure, the officers removed all 428 marijuana plants in the grow and cleaned up the campsite. To water the grow, a natural spring had been partially dammed, and tubes were inserted into the spring to divert the water to each marijuana plant, so the officers had to undam the spring and collect the yards of irrigation tubes. The campsite also contained a stove, tent, sleeping bag, blankets, and trash, all of which the officers collected for removal.

Since the grow was tucked into a remote area of the Sierra National Forest, it was difficult to reach on foot and inaccessible by vehicle, so a helicopter was flown in from Fresno to airlift the trash out of the grow at a rate of $1,100 per hour. The helicopter lowered a net to the ground, hovered while the officers filled the net with the marijuana plants, flew the plants out to the road, and dumped the plants in a truck. The officers buried the remaining plants that did not fit in the net. The helicopter only removed a single load of marijuana plants from the grow, so the rest of the trash from the grow remains. To remove this remaining garbage, U.S. Forest Service officers will need to hike back to the grow, hire a helicopter to fly in, load the helicopter's net, and airlift the garbage out.

Following his arrest, Xiongpao gave a statement to the officers, the transcript of which he has attached as Exhibit A to his sentencing memorandum.[1] In his statement, Xiongpao admitted that he had

---

[1] While the United States concedes that Xiongpao's statement was obtained in violation of his Miranda rights, the Court may nonetheless consider his statement for purposes of sentencing, where the exclusionary rule does not apply. United States v. Haynes, 216 F.3d 789, 801 (9th Cir. 2000), amended

SENTENCING MEMORANDUM     2

been coming back and forth from the grow from May to September, taking his turn "babysit[ting]" the grow. (Dkt. 72-1, Tr. of Interview, pp. 3, 7.) Xiongpao said that he was promised $20,000 when the grow was complete. (*Id.* at p. 7.) Xiongpao admitted that he had shot the rifle in the camp at least once "to scare away the animals," but he told agents that he secured the rifle in the tent before the agents found the grow. (*Id.* at pp. 4–5.)

In October 2015, a grand jury charged Xiongpao in a three-count indictment with conspiracy to manufacture one hundred or more marijuana plants; manufacture of one hundred or more marijuana plants; and depredation of public lands and resources. (Dkt. 11, Indictment.) Xiongpao proceeded to trial on November 7, 2016, and before trial began the United States dismissed the charge of conspiracy to manufacture one hundred or more marijuana plants. Xiongpao did not present any evidence in his defense or take the stand, choosing instead to challenge the sufficiency of the United States's evidence.

After the close of evidence, a jury found Xiongpao guilty of manufacturing marijuana and depredation of public lands and resources. The jury made special findings that Xiongpao manufactured one hundred or more marijuana plants, and that the damage to the public lands exceeded $1,000. (Dkt. 64, Verdict.)

### III.     DISCUSSION

#### A.     The United States agrees that Xiongpao should receive a two-level downward adjustment for acceptance of responsibility.

U.S.S.G. § 3E1.1 provides the defendant with a two-level downward adjustment if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Commentary Note Two clarifies that a defendant may still receive an adjustment for acceptance of responsibility even if he exercises his right to trial. *Id.* at cmt. n.2. Note Two explains that the "rare" situation in which the defendant may go to trial and still demonstrate clear acceptance of responsibility will be based primarily upon a defendant's pretrial statements and conduct. *Id.* "The defendant bears the burden of showing that he has accepted responsibility for his actions." *United States v. Ramos–Medina*, 706 F.3d 932, 940 (9th Cir. 2012).

---

on denial of reh'g (Aug. 15, 2000); United States v. Nichols, 438 F.3d 437, 444 (4th Cir. 2006) (statement admissible at sentencing despite Miranda violation).

SENTENCING MEMORANDUM                    3

Here, Xiongpao's pretrial statements and conduct demonstrate a clear acceptance of responsibility, and his actions at trial do not negate this acceptance. Xiongpao gave a statement to law enforcement officers after his arrest in which he detailed his involvement in the grow and admitted his guilt. He did not attempt to minimize his role in the offense or blame others. Nor did he minimize his role in the offense at trial. Xiongpao did not take the stand and claim he was an innocent bystander or present his own witnesses to excuse his conduct; he simply exercised his right to trial by putting the United States to its burden of proof.

His is not the case described in Note Two in which the defendant expresses contrition and remorse only after his conviction. *See* U.S.S.G. § 3E1.1, cmt. n. 2. Rather, the United States believes Xiongpao has shown clear remorse and contrition since his arrest, and therefore he has clearly accepted responsibility for his role in the offense. *Ramos–Medina*, 706 F.3d at 940.

**B.     The two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with the manufacture of marijuana applies.**

Under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement applies if a firearm was possessed in connection with a drug offense. Note Eleven specifies that this enhancement applies when a firearm is present unless it is "clearly improbable" that the firearm was connected with the offense. U.S.S.G. § 2D1.1(b)(1), cmt. n. 11. For example, the enhancement would not apply if a defendant, arrested in his residence, had an unloaded hunting rifle in the closet. *Id.* The defendant bears the burden to prove it was clearly improbable that he possessed a firearm in connection with the offense. *United States v. Ferryman*, 444 F.3d 1183, 1186 (9th Cir. 2006).

It is not "clearly improbable" that Xiongpao possessed the firearm in connection with the offense. The firearm was found in the campsite in the middle of the grow. It was loaded, and it was placed in the same tent in which Xiongpao was sleeping. True, Xiongpao might not have known that the firearm would be at the grow when he agreed to manufacture marijuana. But even if it was mere happenstance that the rifle was in the grow, Xiongpao continued to use the rifle after he first found it. Xiongpao himself admitted that he possessed the firearm, fired the firearm to scare away animals, and placed the firearm in his campsite, next to his sleeping bag.

Xiongpao compares his case to the case of the defendant arrested with an unloaded hunting rifle

present in his residence. But Xiongpao's case is factually distinguishable. Unlike an unloaded hunting rifle, Xiongpao's rifle was not unloaded and stored in a closet, but rather loaded and placed in his tent, in the middle of a four-hundred plant marijuana grow. Under these circumstances, it is reasonable to infer that Xiongpao possessed the firearm to defend himself and, if necessary, the grow. Indeed, the Ninth Circuit has held that a firearm enhancement may apply even if a gun is locked away in a bedroom compartment, particularly when, as here, police find "a large quantity of drugs and some evidence of drug trafficking in and around the home." *United States v. Suarez*, 655 F. App'x 549, 551 (9th Cir. 2016).

Xiongpao has not proven it is "clearly implausible" that the rifle in the campsite was connected to the offense. Therefore, the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) applies.

### C. **Xiongpao is not eligible for safety valve under 18 U.S.C. 3553(f) and U.S.S.G. § 5C1.2 because he possessed a firearm in connection with his manufacture of marijuana.**

A defendant may qualify for safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 if he meets five factors: (1) he does not have more than one criminal history point; (2) he did not use violence or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others; and (5) the defendant truthfully provides the United States all information and evidence he has concerning the offense prior to sentencing. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a). To qualify for safety valve relief, the burden is on the defendant to prove by a preponderance of the evidence that he did not possess a firearm in connection with the offense. *See United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000). Possession of a firearm will preclude a defendant from safety valve relief if the firearm has "some purpose or effect with respect to the drug trafficking crime," but not if its presence is merely "the result of accident or coincidence." *Smith v. United States*, 508 FU.S. 223, 238 (1993).

The United States agrees that Xiongpao meets factors one, three, four, and five. But he cannot meet his burden on factor two because he possessed a rifle in connection with the manufacture of marijuana. While Xiongpao's burden of proof is lower, he still fails to meet this burden for the same reasons discussed above: even if Xiongpao did not know that there would be a rifle in the grow when he

agreed to manufacture the marijuana, he later fired the rifle to scare away animals, placed the rifle in his campsite, and personally possessed the rifle in the middle of a large marijuana grow. A reasonable inference is that Xiongpao possessed the firearm to protect the grow.

Xiongpao compares his case to *United States v. Boothroyd*, but *Boothroyd* is distinguishable from Xiongpao's case. 403 F. Supp. 2d 1011 (D. Or. 2005). In *Boothroyd*, the defendant operated a marijuana grow on part of his 107-acre ranch. *Id.* at 1017. The defendant was a lifelong hunter who owned several guns, including a hunting rifle that law enforcement found in an outbuilding near the marijuana grow. *Id.* at 1013–14, 1017. The defendant provided a sworn affidavit stating that he never felt the need to arm himself in connection with his marijuana grow. *Id.* The rifle was merely for quick access to protect his livestock and property from predators, such as cougars and coyotes that roamed the area. *Id.* Because the only evidence was the defendant's statement that he never used the rifle in connection with his marijuana grow, only to protect his land and livestock, the district court found that he met his burden to prove that the rifle was not used in connection with the grow. *Id.*

But Xiongpao, by contrast, did not have acres of livestock and ranch land to protect, only a four-hundred plant marijuana grow. And Xiongpao has provided no purpose for possessing the firearm other than to protect himself and the grow. It is Xiongpao's burden to prove that he possessed the firearm in connection with the marijuana grow, but he has not – and cannot – meet this burden.

//
//
//
//
//
//
//
//

### IV.   **CONCLUSION**

The United States agrees that Xiongpao is eligible for a two-level downward adjustment for acceptance of responsibility. But because Xiongpao possessed a firearm in connection with the offense, a two-level increase under 2D1.1 applies, and Xiongpao is ineligible for safety valve relief. The United States therefore believes Xiongpao's total offense level is 18 and his criminal history category is I, yielding a range of 27 to 33 months. However, a five-year mandatory minimum sentence applies.

The United States therefore recommends that the Court sentence Xiongpao to 60 months' imprisonment on Count Two and a concurrent sentence of six months on Count Three, 48 months of supervised release on Count Two and a concurrent sentence of 12 months of supervised release on Count Three, a $200 special assessment, and an amount of restitution to be determined within ninety days.

Dated:  February 23, 2017

PHILLIP A. TALBERT
United States Attorney

By:  /s/ ROSS PEARSON
ROSS PEARSON
Assistant United States Attorney